177 Cal.App.4th 1339 (2009)
In re M.M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
M.M., Defendant and Appellant.
No. E045714.
Court of Appeals of California, Fourth District, Division Two.
September 24, 2009.
*1342 Lauren E. Eskenazi, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
McKINSTER, J. 
On April 25, 2008, an amended petition under Welfare and Institutions Code section 602, subdivision (a), was filed. It charged minor, M.M., with felony vandalism under Penal Code section 594, subdivision (b)(1) (count 1) and resisting or delaying a public officer under Penal Code section 148, subdivision (a)(1) (count 2). On April 30, 2008, the prosecution dismissed count 1 and added count 3, misdemeanor vandalism under Penal Code section 594, subdivision (b)(2)(A).[1]
After the evidence was presented, the juvenile court dismissed count 3 for lack of evidence but found the allegations in count 2, resisting a public officer under section 148, true. The court placed minor on probation in the custody of his mother.
(1) On appeal, minor contends that his conviction under section 148 is not supported by substantial evidence because he did not resist a public *1343 officer. We agree because, as a matter of law, a campus security officer is not a public officer. Therefore, the judgment is reversed.

I

FACTUAL AND PROCEDURAL HISTORY
On January 30, 2008, the security department at Arroyo Valley High School received a call regarding vandalism on campus. Campus security officers Bryan Butts, Oscar Ramos, and Ron Meyer responded directly to the scene, while Officer Alfredo Yanez drove his patrol car around the perimeter of the school campus. Unlike security officer Butts, Officer Yanez is a peace officer employed by the San Bernardino City Unified School District.
When the campus security officers arrived at the scene, they saw a group of students scatter. They pursued one group of three or four students, one of whom was minor, heading towards Baseline Street.
As they began to pursue the group, officer Butts yelled to the group several times to stop. Minor and officer Butts were well acquainted with each other; they had had over 30 conversations with each other. Officer Butts yelled directly to minor, by name, to stop many times. Minor continued to run.
During this pursuit, officer Butts saw minor throw a white container on the ground. The officer believed this container to be a spray paint can. Later, officer Butts returned to retrieve the object thrown, but only found a water bottle.
Eventually, minor exited the campus and encountered Officer Yanez. Minor immediately submitted to his command to stop and was arrested.

II

ANALYSIS
Minor contends that the evidence is insufficient to support a conviction for violating section 148 because, as a matter of law, officer Butts is not a peace officer, a public officer, or an emergency medical technician (EMT), for the purposes of section 148.[2]
*1344 Section 148, subdivision (a)(1) provides, in pertinent part, that "[e]very person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician ... in the discharge or attempt to discharge any duty of his or her office or employment ... shall be punished ...."
(2) The legal elements of the offense of resisting, delaying, or obstructing an officer or EMT are that the defendant willfully resisted, delayed, or obstructed a public officer, peace officer, or an EMT when the officer was engaged in the performance of his or her duties, and the defendant knew or reasonably should have known that the other person was a public officer, peace officer, or EMT engaged in the performance of his or her duties. (In re Muhammed C. (2002) 95 Cal.App.4th 1325, 1329 [116 Cal.Rptr.2d 21].)
(3) The term "public officer" encompasses a wider range of positions than "peace officer." (In re Eddie D. (1991) 235 Cal.App.3d 417, 421 [286 Cal.Rptr. 684].) Although "all peace officers are public officers, all public officers are not peace officers." (Id. at p. 422.) The question on appeal, then, is whether public school security officers are included in this larger category of public officers.
(4) In People v. Olsen (1986) 186 Cal.App.3d 257 [230 Cal.Rptr. 598] (Olsen), the court noted that it is almost impossible to define a "public officer" in every context. (Id. at p. 265.) The court, however, stated as follows: "`[One] of the prime requisites [of a public office] is that [it] be created by the constitution or authorized by some statute. And it is essential that the incumbent be clothed with some portion of the sovereign functions of government, either legislative, executive, or judicial to be exercised in the interest of the public. There must also be a duty or service to be performed, and it is the nature of this duty, not its extent, that brings into existence a public office and a public officer. Thus, an office, as a general rule, is based on some law that defines the duties appertaining to it and fixes the tenure, and it exists independently of the presence of a person in it.' [Citation.]" (Olsen, supra, 186 Cal.App.3d at pp. 265-266, fn. omitted.)
(5) In a footnote, the court noted that a public officer differs from a private officer because the private officer "`holds his position by contract rather than by election or official appointment,'" and the private officer's *1345 "`duties are performed at the instance and for the benefit of the individual or corporation employing him.'" (Olsen, supra, 186 Cal.App.3d at p. 266, fn. 5.)
(6) People v. Rosales (2005) 129 Cal.App.4th 81 [27 Cal.Rptr.3d 897], defines a public officer in a similar fashion. The court stated that "`"A public office is ordinarily and generally defined to be the right, authority, and duty, created and conferred by law, the tenure of which is not transient, occasional, or incidental, by which for a given period an individual is invested with power to perform a public function for the benefit of the public. [Citation.].... The most general characteristic of a public officer, which distinguishes him from a mere employee, is that a public duty is delegated and entrusted to him, as agent, the performance of which is an exercise of a part of the governmental functions of the particular political unit for which he, as agent, is acting .... [Citations.] ..." ... [¶] "[T]wo elements now seem to be almost universally regarded as essential" to a determination of whether one is a "public officer": "First, a tenure of office `which is not transient, occasional or incidental,' but is of such a nature that the office itself is an entity in which incumbents succeed one another ..., and, second, the delegation to the officer of some portion of the sovereign functions of government, either legislative, executive, or judicial." [Citation.]' (Dibb v. County of San Diego (1994) 8 Cal.4th 1200, 1212 [36 Cal.Rptr.2d 55, 884 P.2d 1003], italics omitted.)" (Id. at p. 86.)
In this case, minor was convicted of resisting a public officer under section 148. The evidence showed that minor refused to stop when directed to do so by officer Butts at Arroyo Valley High School. Officer Butts was a campus security officer hired by the school district, not a peace officer. The issue, therefore, is whether a campus security officer, hired by a public school district, qualifies as a public officer.
(7) Based on the definition of a public officer, we find that, as a matter of law, a campus security officer does not qualify as a public officer. First, a campus security officer does not exercise a delegated sovereign function of government. Instead, a campus security officer simply provides security services to the school district and reports such activities to the district and local law enforcement agencies. (Ed. Code, § 38001.5, subd. (c).) Moreover, a campus security officer does not hold a tenured position, one that is held for a specified period of time. He is neither elected nor officially appointed; a security officer is simply hired by the school district. (See Olsen, supra, 186 Cal.App.3d at pp. 265-266.)
*1346 Based on the above, we find that officer Butts is not a public officer. Notwithstanding, the People contend that school security officers are public officers because the officers are performing a public function for the benefit of the public. In support, the People rely on Education Code section 38000. It provides school districts with the power to establish a security department and to "employ personnel to ensure the safety of school district personnel and pupils and the security of the real and personal property of the school district." (Ed. Code, § 38000, subd. (a).) The People also rely on Education Code section 38001.5, subdivision (c). It states that a school security officer provides "security services as a watchperson, security guard, or patrolperson on or about premises owned or operated by a school district to protect persons or property or to prevent the theft or unlawful taking of district property of any kind or to report any unlawful activity to the district and local law enforcement agencies."
(8) These two sections of the Education Code, however, do not support the People's argument. Although both sections 38000 and 38001.5 of the Education Code provide a mechanism for school districts to establish campus security, these sections do not cloak such security personnel with the status of being public officers.
We assume that failure to obey and cooperate with a campus security officer may involve some school-imposed sanction; we are concerned about public safety on school campuses, and the protection of property and maintenance of order on school grounds. However, as a court, we must interpret the laws as the Legislature has enacted them.
(9) The Legislature can amend the existing laws to include security officers hired by public school districts as "public officers" for the purpose of section 148. We, as a court, cannot by judicial fiat change the laws enacted by the Legislature to further public policy objectives. That is the province of the Legislature.
(10) Based on the above, we shall reverse minor's conviction for resisting a public officer because, as a matter of law, officer Butts is not a public officer under section 148.

*1347 III

DISPOSITION
The judgment is reversed.
Ramirez, P. J., and Richli, J., concurred.
NOTES
[1] All statutory references are to the Penal Code unless otherwise specified.
[2] We note that under Education Code section 38001, "[p]ersons employed and compensated as members of a police department of a school district, when appointed and duly sworn, are peace officers, for the purposes of carrying out their duties of employment pursuant to Section 830.32 of the Penal Code." Here, officer Butts was not a member of a police department of the San Bernardino City Unified School District. Instead, he was a security guard hired by the school district. Hence, at trial, the prosecution conceded that campus security officers are not peace officers under section 148.