[Crim. No. 1049.  Second Appellate District, Division One.—February 6, 1924.]

THE PEOPLE, Respondent, v. C. A. HEINRICH, Appellant.

[1] CRIMINAL LAW — ATTEMPT TO COMMIT LARCENY — WHEN CRIME COMPLETE—FICTITIOUS CHECK.—All that is necessary to bring a given case within the meaning and intent of the statute concerning an attempt to commit a criminal offense is that preparations therefor shall be followed by some overt act which, if not interrupted, offers a prospect of successful accomplishment of the crime; and in this prosecution for an attempt to commit grand larceny, the fact that the check given to defendant was fictitious and of no value did not render defendant innocent of the crime charged, where all the preliminary preparations for consummating the act of obtaining the amount of money the check was supposed to represent had taken place before the check was delivered.

[2] ID. — EVIDENCE — SIMILAR FRAUDULENT REPRESENTATIONS. — In a prosecution for an attempt to commit grand larceny, evidence to the effect that representations similar in many respects to those made to the prosecuting witness had been made by defendant to other persons is admissible for the purpose of proving guilty knowledge, intent, and system.

1. Elements of attempt to commit crime, note, 8 Ann. Cas. 630.

[3] ID.—GRAVAMEN OF OFFENSE—FICTITIOUS CHECK—IMMATERIAL IS-
SUE—INSTRUCTIONS.—In such a prosecution, the gravamen of the
offense being the attempted larceny of the amount of money named
in the check, and not the check itself, and no one connected with
the case having made any contention otherwise, the defendant is
not prejudiced by the failure of the trial court to give a part of
one of defendant's requested instructions to the effect that he is
"not herein charged with the attempted larceny of a check."

[4] ID.—ELEMENTS OF CRIME—ACT AND INTENT—INSTRUCTIONS.—In
such a prosecution, it is not prejudicial error to refuse to give
a requested instruction, in the language of section 20 of the Penal
Code, that "in every crime or public offense there must exist a
union, or joint operation of act and intent, or criminal negligence,"
where the substance of such proposed instruction is adequately
covered by other instructions which are given.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Carlos S. Hardy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Geo ge Appell for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney,
Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant was charged by indictment with
an attempt to commit grand larceny. From a judgment of
conviction and from an order denying his motion for new
trial defendant has appealed to this court.

In brief, the evidence shows that defendant advertised
in a newspaper for a superintendent to take charge of a
large ranch at a salary of $350 per month and a percentage
of the income from the ranch, and requiring that such
superintendent deposit with defendant a cash bond. A Mr.
Crandell, who was a detective in the office of the district at-
torney, answered the advertisement. Later Mr. Crandell
met defendant and had a conversation with him regarding
the proposed employment, in which conversation defendant
informed Mr. Crandell that he had a large estate in Mexico,
consisting of several small ranches, on each of which a
foreman was employed; that the position offered was that of
a superintendent who would have charge of all the foremen
and handle the wages of the employees, and that it would

be necessary that Crandell put up a cash bond in the sum of $5,000, or that in lieu of cash he might take a Mexican surety bond. Defendant also told Crandell that the land was owned by a London syndicate, of which a Mr. Totten was president. At a later date Crandell again met defendant and delivered to him a check in the sum of $5,000, which check was fictitious as to the drawer thereof as well as the bank upon which it purported to be drawn. At the same time an agreement relative to the employment and covering the receipt and disposition of the $5,000 was executed and delivered as between the parties. The evidence further showed that defendant was possessed of an apparently genuine agreement giving him the right to purchase approximately 70,000 hectares of land in Mexico, together with "the machinery and the utensils for agriculture, the cattle, the personal and movable property, buildings, wells, improvements of all kinds, and so forth, for the price of one million pesos."

After defendant had been arrested he made a statement, in the nature of an admission, to a deputy district attorney to the effect that the property had been purchased by the British Land & Packing Company, and that defendant was a general manager of the property; that no deed had been actually received, but that $350,000 had been paid in escrow on account of the purchase. The secretary of the abstract company with which the alleged escrow was made testified regarding same and the deposit made therein by A. R. Totten of one check for $250,000, drawn on a bank in Chicago, which check when cashed, under certain conditions in the escrow specified, was to be used as a loan and was to be secured by a second mortgage on certain properties in Mexico identified as including at least a part of the property which defendant had agreed to purchase. He also testified to the receipt by the abstract company of another check for the sum of $100,000, which, according to the instructions accompanying same, was required to complete the $350,000 escrow, which sum was to be held subject to the order of C. A. Heinrich, and to apply on the purchase of the ranches La Labor, Majarros and San Leonel, containing 180,000 acres of land, more or less, and situated near the city of Tepic in the state of Nayarit, republic of Mexico. The abstract company was further instructed to forward

said $350,000 to such bank or company in Mexico as was thereafter designated by said C. A. Heinrich.

It was shown by the vice-president of the bank upon which these checks were drawn that the drawer of the checks never had any funds on deposit in such bank. Evidence was also introduced to show that defendant had negotiated with three other men regarding their proposed employment as superintendent, and that defendant had made statements to them similar to those which he made to Crandell.

It is contended by appellant that the evidence does not prove that any crime was attempted to be committed. In that connection it will be observed that a so-called trust agreement and a set of "by-laws," each of which was signed by Totten, defendant and another person named P. R. Heinrich, and a power of attorney from Totten to defendant, were also introduced in evidence, all of which tended to show the association and the relationship existing between Totten and defendant with reference to the Mexican properties. A reading of these several instruments, together with the other documents introduced in evidence, demonstrates that the "British Syndicate" which defendant stated was the owner of the Mexican property, was composed wholly of Totten, defendant and the other Heinrich, and that not a single dollar had ever been paid by either defendant or the "Syndicate" on account of the purchase price of the Mexican ranchos. The foundation for the employment of Crandell by defendant as the pretended manager of the properties was entirely wanting. The statements made by defendant to Crandell with reference thereto were false and fraudulent and were held out to Crandell for the purpose of inducing him to give to defendant the sum of $5000 as security for the faithful performance of his duties as superintendent of the property which defendant neither owned nor controlled.

[1] Defendant raises the point that because the check given by Crandell to defendant was fictitious no crime was committed nor attempted to be committed, for the reason that the check itself was of no value, but the offense did not consist in the mere taking of the check. The offense was that defendant attempted to feloniously take $5,000 from Crandell, and the fact that the check which was supposed to represent and to be good for that amount was of no value

65 Cal. App.—33

is of no materiality in that connection. The attempt to commit the crime had been made before the fictitious check had been delivered to defendant; all the preliminary preparations for consummating the act had taken place long before that time had arrived. The option on the land had been secured, the trust agreement, by-laws, power of attorney, escrow instructions, and the two bogus checks deposited with the abstract company had all been executed in advance of any overt act toward the perpetration of the fraud. Then came the newspaper advertisement, followed by the several conversations containing the misrepresentations by defendant to Crandell, and, as a finality, the execution and delivery of the contract of employment and the delivery of the fictitious check of $5,000 to defendant. In the case of *People v. Stites*, 75 Cal. 570 [17 Pac. 693], acts of the defendant with reference to an attempt to commit a criminal offense were far from being as complete comparatively as were the acts of the defendant here, and yet they were held sufficient. The ruling in the case of *People v. Mann*, 113 Cal. 76 [45 Pac. 182], wherein the facts as to the overt act were slight as compared to the evidence thereof in the instant case, is that where an unsuccessful effort is made by a defendant in pursuance of a preconceived plan to wrongfully deprive another person of money, the objection that the scheme failed of accomplishment constitutes no defense. In the case of *People v. Mayen*, 188 Cal. 256 [24 A. L. R. 1383, 205 Pac. 435], preparation, followed by an attempt to get possession of money, was held sufficient. To the same effect are *People v. Paluma*, 18 Cal. App. 131 [122 Pac. 431], and *People v. Vaughn*, 25 Cal. App. 738 [147 Pac. 116, 117]. All that is necessary to bring a given case within the meaning and intent of the statute concerning an attempt to commit a criminal offense is that preparations therefor shall be followed by some overt act which, if not interrupted, offers a prospect of successful accomplishment of the crime. As is said in *People v. Vaughn*, 25 Cal. App. 738 [147 Pac. 116]: "The fact that she was prevented from the commission of the crime by any circumstances whatever does not alter the situation; and if upon the completion of the transaction she would have been guilty of the crime of grand larceny by trick and devise, then we are of the opinion that the evidence is sufficient to sustain the finding of the jury

implied from their verdict that she was guilty of an attempt to commit grand larceny by the same means.'' And again, in *People* v. *Stites,* 75 Cal. 576 [17 Pac. 696], quoting the language of Blackburn, J., in an English case, ''if the actual transaction has commenced which would have ended in the crime if not interrupted, there is clearly an attempt to commit the crime.''

The fact that it was an impossibility to commit the intended crime by reason of the fact that the check was valueless is no defense to the charge of attempt to commit grand larceny. It has been held that ''an attempt to pick one's pocket or to steal from his person, when he has nothing in his pocket or on his person, completes the offense to the same degree as if he had money or other personal property which could be the subject of larceny.'' (*People* v. *Lee Kong,* 95 Cal. 668 [29 Am. St. Rep. 165, 17 L. R. A. 626, 30 Pac. 801], citing *State* v. *Wilson,* 30 Conn. 500; *Commonwealth* v. *McDonald,* 5 Cush. 365; *People* v. *Jones,* 46 Mich. 441 [9 N. W. 486]; *People* v. *Moran,* 123 N. Y. 254. [20 Am. St. Rep. 732, 10 L. R. A. 109, 25 N. E. 412].) In the case of *People* v. *Arberry,* 13 Cal. App. 749 [114 Pac. 411], it is held that one who attempted to obtain money by false pretenses was guilty of an attempt, although his intended victim had no money; and the case entitled *In re Magidson,* 32 Cal. App. 566 [163 Pac. 689], is authority to the effect that a defendant was guilty of an attempt to receive stolen goods, although the property was discovered by the police, removed from its place of secretion and returned to the owner of the property before the defendant reached it.

[2] Over the objection of defendant evidence was admitted to the effect that to other persons defendant had made representations similar in many respects to those made by defendant to Crandell. The rule in this state is well established that in analogous cases such evidence is admissible for the purpose of proving guilty knowledge, intent and system. (*People* v. *Whalen,* 154 Cal. 476 [98 Pac. 194]; *People* v. *Gray,* 66 Cal. 275 [5 Pac. 240]; *People* v. *Cory,* 26 Cal. App. 735 [148 Pac. 532]; *People* v. *Eddards,* 25 Cal. App. 660 [145 Pac. 173].)

[3] Defendant offered an instruction beginning with the following statement: ''You are instructed that the defendant is not herein charged with the attempted larceny of a

check, but charged with the attempted larceny of $5,000,'' and defendant here complains of the action of the trial court in refusing to give that part of the instruction which referred to the fact that defendant was ''not herein charged with the attempted larceny of a check.'' As heretofore stated, the larceny of the check itself was not the gravamen of the offense. Apparently no one connected with the case made any contention otherwise. We are unable to perceive just how a failure to state that particular fact to the jury could have harmed defendant any more than a failure to state to the jury many other facts not pertinent to the cause could in anywise have prejudiced defendant's case. It was defendant's proposed instruction, and he here admits that as given it correctly stated the law.

Complaint is also made that certain instructions are conflicting; but upon examination of them this court is unable to agree with counsel for defendant in that regard.

[4] It is also contended that the court erred in refusing to give to the jury an instruction in the language of section 20 of the Penal Code, requested by defendant, that ''in every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.'' While the giving of such instruction would not have been error, the substance of the proposed instruction was adequately covered by other instructions given to the jury; hence defendant was in nowise harmed by the action of the court in that connection.

Appellant further predicates error upon the refusal of the court to give, at defendant's request, several other instructions. Each of them has to do with what this court has heretofore indicated in its opinion is an immaterial matter; that is, the bearing that the fictitious check for $5,000 has upon the ultimate question of defendant's intent to steal that sum of money. The attempt was not to steal the check itself, but was to steal $5,000. Whether the check was good or bad is of no consequence; hence the instructions offered in connection with that feature of the case were properly refused.

So far as this court is able to determine, every feature of the case was fully and fairly covered by instructions given to the jury. No prejudicial error appearing, it is

ordered that the judgment and the order denying the motion for new trial be and the same are affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 6, 1924, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 3, 1924.